UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-80670-CV-MARRA

AJA DE LOS SANTOS,

    Plaintiff,

v.

MILLWARD BROWN, INC.,

    Defendant.
_____/

**ORDER DENYING DEFENDANT'S MOTION TO
DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

**THIS CAUSE** comes before the Court upon Defendant Millward Brown, Inc.'s Motion to Dismiss [ECF No. 28] Plaintiff Aja De Los Santos' Second Amended Class Action Complaint [ECF No. 25] for violation of the Telephone Consumer Protect Act of 1991, 47 U.S.C. § 227 ("TCPA" or "the Act"). The United States has intervened to defend the constitutionality of the TCPA, and the parties have fully briefed Defendant's motion. The Court has declined to hold a hearing.

### I.    BACKGROUND

In January 2013, Plaintiff received an unsolicited telephone call on her cellular phone. 2d Am. Comp. ¶ 20. When she answered it, she heard "dead air." *Id.* ¶ 21. The caller identified himself on behalf of Defendant Millward Brown, and offered Plaintiff a gift card if she took a survey. *Id.* ¶ 22.

Millward Brown is a market research firm. *Id.* ¶ 6. Its current Chief Information Officer ("CIO") was the former CIO at SPSS, Inc., an IBM, Inc. company. *Id.* ¶ 23. SPSS developed

the IBM SPSS Data Collection Dialer, "a cutting-edge automatic telephone dialing system ('autodialer') designed for large-scale market research organization." *Id.* ¶ 23. The SPSS autodialer can generate numbers randomly and dial them. *Id.* ¶ 24.

Plaintiff alleges that Defendant autodialed her. *Id.* ¶ 25. Elsewhere, Plaintiff alleges that Defendant dialed her from a "bulk list" of telephone numbers. *Id.* ¶ 30. Plaintiff is the "sole subscriber, owner, possessor, and operator of" her cellular telephone. *Id.* ¶ 19.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

## III.     DISCUSSION

The Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227, regulates the use of "automatic telephone dialing systems[s]." *See* 47 U.S.C. § 227(b)(1)(A) (prohibiting autodialing certain numbers). An automatic telephone dialing system, or an autodialer, is "equipment which has the capacity . . . to store or produce telephone numbers to be called, using a random or sequential number generator, and . . . to dial such numbers." 47 U.S.C. § 227(a)(1). Under the Act,

>   (1) It shall be unlawful . . .
>
>   > (A) to make any call (other than a call made for emergency purposes of made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—
>   >
>   > > (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call.

47 U.S.C. § 227(b). The TCPA provides an injured "person or entity" injured by a violation of the Act a private right of action to recover statutory damages, trebled for willful or knowing violations, and to seek an injunction. § 227(b)(3). Plaintiff claims Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii), and seeks $500 in statutory damages per call or $1500 in treble damages per call, an injunction enjoining Defendant from violating the TCPA, and a declaration that Defendant uses an autodialer. Defendant moves to dismiss for Plaintiff's lack of standing, failure to state a claim, and the TCPA's unconstitutionality.[1]

### A. STANDING

Defendant moves to dismiss Plaintiff's complaint for lack of standing, arguing that the TCPA requires a plaintiff to be charged for an incoming call to have standing to sue for a violation. The TCPA prohibits autodialing "with[out] the prior express consent of the called party . . . any telephone number assigned to a paging service, cellular telephone service,

---

[1] Plaintiff brings her complaint on behalf of a class similarly injured cellular phone users. *Id.* ¶ 29. Although Defendant, in its Motion to Dismiss, argues against class certification, this argument is misplaced. A motion to dismiss should not be used to challenge class certification. *See Jones v. Diamond*, 519 F.2d 1090, 1098 (5th Cir. 1975) (finding trial court abused its discretion by "deciding against the class solely on the basis of the initial pleadings" as courts "should be loath to deny the justiciability of class actions without the benefit of the fullest possible factual background."); *see generally* 7B Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, *Federal Practice and Procedure* § 1798 (3d. ed. 2010) ("Compliance with the Rule 23 prerequisites theoretically should not be tested by a motion to dismiss for failure to state a claim . . . .").

specialized mobile radio service, or other radio common carrier service, or any service *for which the called party is charged for the call*." 47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added). Defendant argues that the phrase "for which the called party is charged for the call" modifies "any telephone number," so that only the person or entity charged for the call has a right to be free from autodialing. According to Defendant, because Plaintiff has not alleged that she was charged for Defendant's call, she suffered no injury: requirement for standing is an "injury-in-fact." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Plaintiff responds that she has indeed suffered an injury-in-fact. By receiving a call, her statutory right was violated: a statute "creat[es] legal rights, the invasion of which creates standing." *Id.* at 579 (internal quotation marks and citation omitted).

The Court must decline Defendant's proposed interpretation, as the Eleventh Circuit has determined that a defendant violates 47 U.S.C. § 227(b)(1)(A)(iii) by autodialing a cellular telephone service regardless if the called party is charged for the call. *See Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014). In *Osorio*, the Eleventh Circuit explained that, by the rule of the last antecedent, the phrase "for which the called party is charged for the call" only modifies the term "any service," and nothing else. *See Osorio*, 746 F.3d at 1257. Furthermore, it explained that to read the phrase "for which the called party is charged for the call" to modify all the preceding terms would render those terms superfluous, defeating the requirement that courts "give[] independent meaning to each [statutory] term." *See id.* at 1258. Finally, because the TCPA empowers the Federal Communications Commission (FCC) to exempt "calls to a telephone number assigned to a cellular telephone service that are not charged to the called party," 47 U.S.C. § 227(b)(2)(C), the TCPA must apply to cellular phones when the called party

is not charged for the call. Otherwise, Congress would have no need to authorize an exemption. *See id.* at 1258. Accordingly, the Eleventh Circuit held that the called party need not be charged for an incoming call to state a claim for a violation of 47 U.S.C. § 227(b)(1)(A)(iii). *See id.*

To have standing to pursue her TCPA claim, Plaintiff must allege that Defendant violated her "legally protected interest." *Lujan*, 504 U.S. at 560. If a called party can state a claim for a violation of 47 U.S.C. § 227(b)(1)(A)(iii) without being charged for an incoming call, then that called party has a legally protected interest in being free from autodialed calls. Under 47 U.S.C. § 227(b)(1)(A)(iii), the term "called party" means the cellular telephone service "subscriber." *See Osorio*, 746 F.3d at 1251 (citing *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637 (7th Cir. 2012) (Easterbrook, J.)); *Breslow v. Wells Fargo Bank*, ___ F.3d ____, 2014 WL 2565984, at *1 (11th Cir. June 9, 2014) ("'[C]alled party,' for purposes of § 227(b)(1)(A)(iii), means the subscriber to the cell phone service.") (citing *Osorio*, 746 F.3d at 1251)). In the present case, Plaintiff alleges that she was the "sole subscriber, owner, possessor, and operator of" her cellular telephone. 2d Am. Comp. ¶ 19. As the subscriber, Plaintiff was the called party. Therefore, because Defendant has invaded Plaintiff's legally protected interest in being free from autodialed calls, Plaintiff has standing to sue.[2]

### B. PLAUSIBILITY

To state a violation of 47 U.S.C. § 227(b)(1), Plaintiff must show that Defendant (1) "called a number," (2) "assigned to a cellular telephone service," (3) "using a an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316,

---

[2] For standing, there must also be causality and redressability. *Lujan*, 504 U.S. at 560–61. Defendant does not argue, and the Court does not find, these elements to be wanting.

1319 (S.D. Fla. 2012) (Scola, J.).  Defendant denies Plaintiff has shown element (3).  According to Defendant, Plaintiff's factual allegations are not only insufficient, but also contradictory. Def.'s Mot. to Dismiss 8.  Defendant argues that it is insufficient to allege only that Plaintiff heard "dead air" or that the former CIO of SPSS is now the CIO of Millward Brown. *Id.* at 8–9. Defendant argues that Plaintiff contradicts herself by simultaneously alleging that Defendant "randomly" dialed numbers, but also placed calls "to a bulk list" of numbers. *Id.*at 9.

To state a claim under the TCPA, Plaintiff need only to allege that Defendant used an autodialer. *See Buslepp v. B&B Entm't, LLC*, No. 12–60089–CIV, 2012 WL 1571410, at *1 (S.D. Fla. May 3, 2012) (Cohn, J.) (denying motion to dismiss because "the allegation that Defendant used [an autodialer] . . . is a factual allegation under *Twombly* and *Iqbal*.").  Although Defendant dismisses Plaintiff's allegations as "naked, "conclusory," and "speculative," Plaintiff provides additional facts, such as hearing "dead air," a signature of autodialing.  *See* FCC, Consumer Guide: Unwanted Telephone Marketing Calls 2 (2013), http://www.fcc.gov/cgb/consumerfacts/tcpa.pdf ("The use of autodialers . . . often results in abandoned calls—hang-ups or 'dead air.'").  Plaintiff also alleges that she had no previous relationship with Defendant, nor any reason for Defendant to call her.  *See Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165, 1171 (N.D. Cal. 2010) ("Read as a whole, the complaint contains sufficient facts to show that it is plausible that Defendants used [an autodialer] . . . The messages were advertisements written in an impersonal manner.  [Plaintiff] had no other reason to be in contact with Defendants.").  Due to the information disparity between the caller and the person called, circumstantial allegations of autodialing are sufficient to withstand a motion to dismiss. *See generally* Robert D. Brownstone, 1 Data Sec. and Privacy Law § 9:69 (2013) ("To balance

6

the plaintiff's difficulty in obtaining information about the equipment used to make a call prior to discovery . . . , a number of courts have held that plaintiffs can avoid dismissal by alleging facts about the circumstances surrounding the call sufficient to create a plausible inference that the call was made using an automatic telephone dialing system.").

Nor is Plaintiff's complaint impermissibly contradictory.  Not only may a complaint be contradictory, *see U.S. Specialty Ins. Co. v. Jet One Exp., Inc.*, No. 12-62537-Civ, 2013 WL 3451362 (S.D. Fla. July 9, 2013) ("[T]he Federal Rules tolerate, at least to some extent, inconsistent allegations, so their mere presence does not automatically demand dismissal for failure to state a claim.") (citing *United Techs. Corp. v. Mazer*, 556 F. 3d 1260, 1273–74 (11th Cir. 2009) (reversing dismissal of what district the court considered were "inconsistent claims")), but Plaintiff's allegations do not necessarily contradict themselves.  In fact, Defendant could autodial numbers from a pre-generated list of numbers, thereby "randomly" placing calls "to a bulk list" of numbers.  For these reasons, Plaintiff has stated a plausible claim for relief.

### C.  CONSTITUTIONALITY

Congress may regulate speech through "reasonable time, place, and manner regulations." *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984).  Such regulations cannot suffer from "overbreadth," *Broadrick v. Oklahoma*, 413 U.S. 601 (1973), or "vaguensss." *F.C.C. v. Fox Television Stations*, Inc., 132 S. Ct. 2307 (2012).  Courts presume federal statutes are constitutional, and the challenger bears of the burden of showing otherwise. *United States v. Morrison*, 529 U.S. 598, 607 (2000).

### 1.  REASONABLE TIME, PLACE, OR MANNER RESTRICTION

The TCPA does not regulate content. Instead, it regulates context—the time, place, or manner of communication. Congress may restrict the "time, place, or manner" of protected speech if the restrictions (1) "are justified without reference to the content of the regulated speech," (2) "are narrowly tailored to serve a significant governmental interest," and (3) "leave open ample alternative channels for communication of the information." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989); *Amnesty Int'l, USA v. Battle*, 559 F.3d 1170, 1182 (11th Cir. 2009).

Defendant argues that the TCPA is not (2) narrowly tailored to serve a significant governmental interest. Def.'s Mot. to Dismiss 12. Defendant asserts that the government's significant interest in prohibiting autodialing cellular phones was to prevent cellular phone users from incurring "unwanted charges." *Id.* When Congress passed the TCPA, cellular phone plans charged users for incoming calls. Now, however, they do not. *Id.* at 14. Even if they did, Defendant explains, many cellular phones are used by business people who do not pay for their own plans. *Id.* Therefore, because cellular phone users no longer incur "unwanted charges," the TCPA no longer serves a significant governmental interest. *Id.*

Defendant also argues that the TCPA law bans more calls than necessary to serve its interest: "The statute purportedly draws no distinction between calls initiated for marketing purposes, calls made for research, and calls made to reconnect with old friends." *Id.* at 13. Furthermore, Defendant explains, the term "autodialer" includes "many, if not most, devices used by ordinary people to place ordinary calls." *Id.* at 14. Under the TCPA, an "automatic telephone dialing system," or an autodialer, is "equipment which has the capacity . . . to store or produce telephone numbers to be called, using a random or sequential number generator, and . . .

8

to dial such numbers." 47 U.S.C. § 227(a)(1). Today, though, almost all phones are autodialers. Any phone with advanced software, commonly known as a "smartphone," or any computer connected to the internet, can be an autodialer. *Id.* All are "equipment" with "the capacity" to randomly or sequentially produce and dial numbers. *Id.* Therefore, Defendant concludes, the TCPA protects too many calls, from too many devices, to be narrowly tailored. *Id.* at 15.

### a. NARROWLY TAILORED TO SERVE A SIGNIFICANT GOVERNMENTAL INTEREST

To challenge a law for lack of narrow tailoring, a defendant must show that "the acts of his that are the subject of the litigation fall outside what a properly drawn prohibition could cover." *Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 482 (1989). In this case, Defendant's act that is the subject of this litigation is autodialing a cellular phone. To succeed on its claim for lack of narrow tailoring, Defendant must show that if the TCPA were narrowly tailored, it would not cover Defendant's act. Defendant cannot make this showing.

Although Defendant argues that the TCPA broadly bans phone calls from friends' cellular phones, or misdialed numbers from computers, Def.'s Mot. to Dismiss 14, Defendant does not argue that it was such a caller, nor does Plaintiff allege it was. Instead, Plaintiff alleges that Defendant autodialed her cellular phone to ask her to take a survey. Even if the TCPA were more narrowly tailored to allow phone calls from friends' cellular phones or misdialed numbers from computers, the TCPA would still cover "the acts . . . that are the subject of the litigation . . ." *Fox*, 492 U.S. at 482,—that is, autodialing cellular phones to request participation in a survey.

9

Moreover, the TCPA does serve a significant governmental interest. To determine a statute's significant governmental interest, a court should look to its "text and history." *See Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 568 (1991); *Flanigan's Enters., Inc. of Georgia v. Fulton County, Ga.*, 242 F. 3d 976, 985–86 (11th Cir. 2001). Reporting the TCPA to the Senate, the Committee on Commerce, Science, and Transportation explained that the general purpose of the TCPA was "to protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls to the home and to facilitate interstate commerce by restricting certain uses of facsimile (tax) machines and automatic dialers." S. Rep. 102-178, at 1 (1991), *reprinted in* 1991 U.S.C.C.A.N. 1968, 1968, 1991 WL 211220 (Purpose of the Bill) (emphasis added). As to facilitating interstate commerce, the Committee explained as follows:

> Residential and business subscribers believe[d] that these calls are an impediment to interstate commerce. In particular, they cite the following problems: . . . unsolicited calls placed to fax machines, and cellular or paging telephone numbers often impose a cost on the called party (fax messages require the called party to pay for the paper used, cellular users must pay for each incoming call, and paging customers must pay to return the call to the person who originated the call).

*Id.* at 2 (Background and Needs: Consumer Complaints). Likewise, reporting the TCPA to the House, the Committee on Energy and Commerce explained that "customers who pay additional fees for cellular phones, pagers, or unlisted numbers are inconvenienced and even charged for receiving unsolicited calls from automatic dialer systems." H.R. Rep. No. 102-317, at 24 (1991).

To Defendant, these purposes, or this significant governmental interest, have been negated as a matter of fact by modern cellular payment plans and employer provided cellular phones. However, even if the Court assumed the facts of which Defendant requests it take

judicial notice,[3] the TCPA could still prohibit Defendant's acts that are the subject of this litigation. Narrow tailoring does not require a regulation be the "least restrictive or least intrusive means of" serving the governmental interest. *Ward*, 491 U.S. at 2757. Rather, a regulation is narrowly tailored if the government interest "would be achieved less effectively absent the regulation." *Id.* at 2758 (internal quotation marks omitted). That Congress could tailor the TCPA to only prohibit autodialing cellular phones whose users are charged for incoming calls does not mean that it must. Even if the Court were grant Defendant's relevant requests for judicial notice, the TCPA would remain narrowly tailored.

## 2. OVERBREADTH

A law suffers from "overbreadth" if, in prohibiting unprotected speech, it "sweeps too broadly," prohibiting a "substantial amount" of protected speech. *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 129 (1992); *Horton v. City of St. Augustine, Fla.*, 272 F. 3d 1318, 1331 (11th Cir. 2001). According to Defendant, the TCPA is overbroad because the statutory term "automatic telephone dialing systems," or autodialers, applies to most smartphones and computers. Def.'s Mot. to Dismiss 13. By prohibiting phone calls from autodialers, Defendant

---

[3] Specifically, Defendant requests the Court take notice of the following facts: "Under many cellphone plans currently offered by wireless carriers, including 'unlimited use' plans offered for a flat monthly fee, cellphone users incur no unwanted charges for in-coming calls," "Even those cellphone plans which are use-based generally involve the contractual pre-purchase of minutes in amounts that exceed the periodic needs of the individual subscribers," and "A substantial portion of cellphone users today are receiving calls on cellphones registered to and/or paid for by their corporate business or their employers' businesses." Def.'s Request for Judicial Notice ¶¶ 8–10 [DE 29].
  However, the Court will not take judicial notice of these asserted facts. The Court cannot conclude that these asserted facts are "generally known within the trial court's territorial jurisdiction" or that they can be "accurately and readily determined from sources whose accuracy cannot be reasonably questioned." Fed. R. Evid. 201(b); s*ee Terms Applicable to AT&T National GSM Plans,* AT&T, https://www.wireless.att.com/businesscenter/popups/general/explanation-rates-charges.jsp (last visited May 15, 2014) ("You may be charged for both an incoming and an outgoing call when incoming calls are routed to voicemail, even if no message is left"); David Pogue, *Hurrahs and Harrumphs for T-Mobile*, N.Y. TIMES (April 4, 2013, 4:23 PM), http://pogue.blogs.nytimes.com/2013/04/04/hurrahs-and-harrumphs-for-t-mobile/ ("As far as I know, the United States is one of the few countries where you pay for incoming and outgoing calls and texts.")

argues, the TCPA sweeps too broadly, prohibiting a substantial amount of constitutionally protected phone calls. *Id.* 12.[4]

Defendant premises its overbreadth challenge on legal conclusion that autodialers include many smartphones and computers, a conclusion this Court will not join. Under the TCPA, an autodialer is "equipment which has the capacity . . . to store or produce telephone numbers to be called, using a random or sequential number generator, and . . . to dial such numbers." 47 U.S.C. § 227(a)(1). As other courts have held, the term "capacity" refers to "present, not potential, capacity" to produce and dial numbers. *See e.g., Gragg v. Orange Cab Co., Inc.*, C12-0576RSL, 2014 WL 494862 (W.D. Wash. Feb. 7, 2014)  Otherwise, the term autodialer would have no "outer limit," for "[v]irtually every telephone in existence, given a team of sophisticated engineers working doggedly to modify it, could possibly store or produce numbers using a random or sequential number generator." *Hunt v. 21st Mortgage Corp.*, 2:12-CV-2697, 2014 WL 4260275, at *5 (N.D. Ala. Feb. 4, 2014); *see also In re Jiffy Lube Int'l, Inc.*, 847 F. Supp. 2d 1253, 1261 (S.D. Cal. 2012) (rejecting an argument similar to Defendant's because it "provides essentially no support for its assertion that use of an iPhone or BlackBerry could fall under the statute's purview"). For this reason, even sophisticated computer systems are not necessarily autodialers. *See Dominguez v. Yahoo!, Inc.*, No. 13-1887, 2014 WL 1096051, at *4 n.4 & *5 (E.D. Pa. Mar. 20, 2014) (granting summary judgment for the defendant because there was no evidence that the internet company Yahoo!'s computer system had the present capacity to randomly or sequentially generate numbers).  If autodialers included smartphones, or if

---

[4] Arguing that a law is not narrowly tailored, and arguing that it is overbroad—suffering from "overbreadth"— are similar. Defendant, and some courts, use the term interchangeably. The term, however, refers to two distinct constitutional challenges. *See Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 482 (1989). Because Defendant does not distinguish between the challenges, the Court analyzes both.

autodialers included computers, then Defendant could argue for overbreadth. However, as of yet, no court, nor this one, will interpret the TCPA so broadly.

### 3. VAGUENESS

A statute is vague if it does not "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited . . . ." *Catron v. City of St. Petersburg*, 658 F.3d 1260, 1271 (11th Cir. 2011) (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972)) (internal quotation marks omitted). Defendant argues that the TCPA is vague because Defendant cannot know whether the autodialing cellular phones used by business employees are prohibited. Def.'s Mot. to Dismiss 16. Defendant explains that the employee's business, not the employee, would be charged for the call. *Id.* at 17. Because the TCPA does not delineate which calls to business cellular phones are prohibited and which are not, Defendant concludes the Act is vague. *Id.* at 15.

Defendant premises its vagueness argument on the belief that the TCPA does not prohibit autodialing a business employee's cellular phone. This belief is unfounded. In truth, the TCPA prohibits such calls, even if the business pays for it. As explained in the preceding discussion of Plaintiff's standing, the TCPA prohibits autodialed calls to any cellular phones. As a result, numerous courts have held that a cellular phone user may assert a cause of action under the TCPA, even if he or she was not charged for the incoming call. *See e.g., Osorio,* 746 F.3d at 1258; *Manno v. Healthcare Revenue Recovery Group*, LLC, 289 F.R.D. 674 (S.D. Fla. 2013) (Scola, J.); *Buslepp v. Improv Miami, Inc.*, 2012 WL 1560408, at *2 (S.D.Fla. May 4, 2012) (Cohn, J.). Defendant also argues the TCPA must permit autodialing a business employee's cellular phone, because in another subsection the TCPA specifically prohibits autodialing a

13

business "in such a way that two or more telephone lines of a multi-line business are engaged simultaneously." 47 U.S.C. § 227(b)(1)(D). According to Defendant, because the TCPA specifically prohibits these calls, it must permit all others. Def.'s Mot. to Dismiss 17. But, specifying which autodialed calls to businesses are prohibited is not inconsistent with prohibiting autodialed calls to cellular phones, whether they be business owned or not. The TCPA prohibits all autodialed calls to cellular phones, and prohibits some calls to business phones. A person of reasonable intelligence would read the Act, and know never to autodial a cellular phone, or, when calling a business phone, to never engage two lines simultaneously.

Finally, Defendant points to regulations implementing the Telemarketing and Consumer Fraud Abuse Prevention Act (TCFAPA), 15 U.S.C. § 1601–08, regulations which expressly exempt calls to businesses, *see* 16 C.F.R. 310.6(b)(7). Def.'s Mot. to Dismiss 18. Defendant asserts it is confused because, considering the FCC's goal of consistency between the TCPA and TCFAPA, it cannot know whether calls to businesses are exempted or prohibited. "The statute thus fails to put business owners on adequate notice as to whether they could be in violation of its terms for calling a phone registered to a business." *Id.* Again, this confusion is unwarranted. The TCPA does not prohibit autodialed calls to businesses, except in some, specified circumstances, and always prohibits autodialed calls to cellular phones, even business phones. TheCourt rejects Defendant's vagueness argument.

## IV.   CONCLUSION

For the aforementioned reasons, it is hereby

**ORDERED** and **ADJUDGED** that:

Case 9:13-cv-80670-DPG   Document 66   Entered on FLSD Docket 06/30/2014   Page 15 of 15
Order Denying Defendant's Motion to Dismiss  Plaintiff's Second Amended Complaint
*Aja de los Santos v. Millward Brown, Inc.*, No. 13-80670-CV-MARRA

1. Defendant Millward Brown, Inc's Motion to Dismiss [ECF No. 28] Plaintiff Aja De Los Santos' Second Amended Complaint [ECF No. 25] is **DENIED**.

**DONE** and **SIGNED** in Chambers at West Palm Beach, Florida this 29th day of June, 2014.

KENNETH A. MARRA
United States District Judge

*Copies provided to counsel of record*