**IN THE UNITED STATES DISTRICT COURT FOR**
**THE SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 9:13-CV-80670-KAM**

AJA DE LOS SANTOS, on behalf of herself
and others similarly situated,
Plaintiff,

vs.

MILLWARD BROWN, INC., A Delaware
Corporation,
Defendant

**MOTION FOR FINAL**
**APPROVAL OF CLASS ACTION SETTLEMENT**

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION.................................................................................................. 6

II.     SUMMARY OF THE LITIGATION, MEDIATION & SETTLEMENT................... 7

III.    NOTICE PROVIDED WAS MORE THAN SUFFICIENT. ...................................... 10

IV.     THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, AND
        THUS IT MERITS FINAL APPROVAL ................................................................. 12
        A.    The Agreement Is the Result of Arm's Length Negotiation between the
              Parties with the Assistance of an Experienced Mediator...................................... 14
        B.    The Agreement Satisfies Each of the Eleventh Circuit's *Bennett* Factors............ 14
              1.   Likelihood of Success at Trial ................................................................ 15
              2.   Range of Possible Recovery and the Point at which the Agreement
                   Is Fair,  Reasonable, and Adequate........................................................... 16
              3.   The Complexity and Expense of Further Litigation ................................. 17
              4.   Substance and Amount of Opposition to Agreement................................. 18
              5.   Stage of Proceedings at which Settlement Achieved ................................. 18

V.      THE COST AND ATTORNEY FEE AMOUNT IS REASONABLE ....................... 19
        1.   The Time and Labor Required, Preclusion from Other Employment and the
             Time Limits Imposed Justify the Cost and Fee Amount. ...................................... 21
        2.   The Case Involved Difficult Issues; the Risk of Nonpayment and Not
             Prevailing on the Claims Was High........................................................................ 22
        3.   Class Counsel Achieved an Excellent Result for the Settlement Class................. 23
        4.   The Requested Fee is Consistent with Other TCPA Class Settlements................ 24

VI.     CONCLUSION ...................................................................................................... 25

## TABLE OF AUTHORITIES

**Cases**

*Access Now, Inc. v. Claire's Stores, Inc.*
  00-cv-14017, 2002 WL 1162422 (S.D. Fla. May 7, 2002).................................... 15
*Accounting Outsourcing, LLC. v Verizon Wireless*
  2007 U.S. Dist. LEXIS 97153 (M.D. La. 2007) ...................................................... 23
*Adams v. AllianceOne Receivables Mgmt.*
  No. 08-cv-248 (S.D. Cal. Sept. 28, 2012)................................................................ 13
*Agne v. Papa John's International Inc. et al*
  2:10-cv-01139 (D. Wa.).............................................................................................. 2
*Aliano v. Joe Caputo & Sons - Algonquin, Inc.*
  No. 09 C 910, 2011 U.S. Dist. LEXIS 48323 (N.D. Ill. May 5, 2011) ................... 12
*Allapattah Servs., Inc. v. Exxon Corp.*
  No. 91-cv-0986, 2006 WL 1132371 (S.D. Fla. Apr. 7, 2006)..................... 15, 21, 23
*Arthur v. Sallie Mae*
  No. C10-198, 2012 U.S. Dist. LEXIS 3313 (W.D. Wash. Jan. 10, 2012).............. 13
*Behrens v. Wometco Enters., Inc.*
  118 F.R.D. 543, (S.D. Fla. 1988)............................................................................ 14
*Bennett v. Behring Corp.*
  737 F.2d 982, (11th Cir. 1984).......................................................................... passim
*Boeing Co. v. Van Gemert*
  444 U.S. 472, (1980).......................................................................................... 16, 18
*Camden I Condo Ass'n v. Dunkle*
  946 F.2d 768, (11th Cir. 1991) .................................................... 16, 17, 18, 19
*CE Design Ltd. v. Cy's Crab House N., Inc.*
  No. 1:07-cv-05456 (N.D. Ill. Oct. 27, 2011) .......................................................... 22
*CE Design, Ltd. v. Exterior Sys., Inc.*
  No. 1:07-cv-00066 (N.D. Ill. Dec. 6, 2007)............................................................ 23
*Checking Account Overdraft Litig.*
  830 F. Supp.2d 1330, 1344 (S.D. Fla. 2011) .......................................................... 10
*Cohn v. Nelson*
  375 F. Supp. 2d 844, (E.D. Mo. 2005)..................................................................... 16
*Cummings v Sallie Mae*
  12 C-9984 (N.D. Ill. May 30, 2014) ........................................................................ 22
*Faught v. Am. Home Shield Corp.*
  668 F.3d 1233, 1239 (11th Cir. 2011) ....................................................... 6, 17, 19
*Francisco v. Numismatic Guar. Corp.*
  No. 06-61677, 2007 U.S. Dist. LEXIS (S.D. Fla. Jan. 31, 2007) ........................... 21
*G.M. Sign, Inc. v. Finish Thompson, Inc.*
  No. 1:07-cv-05953 (N.D. Ill. Nov. 1, 2010) ........................................................... 23
*Gehrich v. Chase Bank, USA, N.A.*
  No. 1:12-cv-05510 (N.D. Ill. Aug. 12, 2014) ......................................................... 22
*Gibson & Company Insurance Brokers, Inc. v. QFA Royalties LLC.*
  06-cv-05849-PSG-PLA (C.D. Ca. 2009).................................................................. 4

*Guarisma v. ADCAHB Medical Coverages, Inc., et al.*
   1:13-cv-21016 (S.D.FL. June 24, 2015) ................................................................ 22
*Hall v. Cole*
   412 U.S. 1, (1973) ................................................................................................ 22
*Hanley v. Fifth Third Bank*
   No. 1:12-cv-01612 (N.D. Ill. Dec. 23, 2013) ...................................................... 22
*Hensley v. Eckerhart*
   461 U.S. 424, (1983) ............................................................................................ 16
*Hinman, et al., v. M & M Rental Ctr., Inc.*
   No. 1:06-cv-01156 (N.D. Ill. Oct. 6, 2009) ........................................................ 23
*Holtzman v. CCH*
   No. 1:07-cv-07033 (N.D. Ill. Sept. 30, 2009) ..................................................... 23
*In re Capital One TCPA Litigation*
   12-cv-10064 (MDL No. 2416) (N.D. Ill. Feb. 12, 2015).................................. 13, 23
*In re CP Ships Ltd. Sec. Litig.*
   578 F. 3d 1306, 1317 (11th Cir. 2009).................................................................. 5
*In re Domestic Air Transport. Antitrust Litig.*
   148 F.R.D. 297, (N.D. Ga. 1993) ........................................................................ 8
*In re Enhanced Recovery Co.*
   13-md-2398-RBD-GJK (M.D. Fla. July 29, 2014) .............................................. 13
*In re Shell Oil Refinery*
   155 F.R.D. 552, 560 (E.D.La.1993)..................................................................... 14
*In re Sturm, Ruger & Co., Inc.*
   No. 09cv1293, 2012 U.S. Dist. LEXIS 116930 (D. Conn. Aug. 20, 2012)............. 2
*In re U.S. Oil & Gas Litig.*
   967 F.2d 489, (11th Cir. 1992)............................................................................. 8
*Ingram v. The Coca-Cola Co.*
   200 F.R.D. 685, (N.D. Ga. 2001).......................................................................... 10
*Jamison v First Credit Servs., Inc.*
   No. 1:12-cv-04415 (N.D. Ill.  2013) .................................................................... 11
*Johnson v. Georgia Highway Expr., Inc.*
   488 F.2d 714 (5th Cir. 1974) ....................................................................... passim
*Jurvis v. Inamed Corp.*
   685 F.3d 1294, 1321 (11th Cir. 2012) ................................................................. 6
*Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*
   540 F.2d 102 (3d Cir. 1976).................................................................................. 21
*Lipuma v. Am. Express Co.*
   406 F. Supp. 2d 1298, 1315 (S.D. Fla. 2005) ................................................ passim
*Locklear Elec., Inc. v. Norma L. Lay*
   No. 3:09-cv-00531 (S.D. Ill. Sept. 8, 2010)........................................................ 23
*Martin v. Dun & Bradstreet, Inc. et al*
   No. 1:12-cv-00215 (N.D. Ill. Jan. 16, 2014)....................................................... 22
*Morrison v. Nat'l Australia Bank Ltd.*
   561 U.S.247 (2010)................................................................................................ 6

*Mullane v. Cent. Hanover Bank & Trust Co.*
   339 U.S. 306, 314 (1950) ........................................................................ 6
*Newman v. Sun Capital Corp.*
   No. 09-cv-445, 2012 U.S. Dist. LEXIS 121843 (M.D. Fla. Aug. 28, 2012) ........................... 11
*Nicholson v Hooters of Augusta, Inc.*
   95-RCCV- 616 (Richmond County, Ga. April 25, 2001) ........................................... 4
*North Suburban Chiropractic Clinic Ltd. V. Rx Security, Inc.*
   1:13-cv-06897 (N.D. Ill.) ...................................................................... 2
*North Suburban Chiropractic Clinic, Ltd v. Zydus Pharmaceuticals (USA) Inc.*
   1:13-cv-03105 (N.D. Ill.) ...................................................................... 2
*Paldo Sign and Display Company v. Topsail Sportswear, Inc.*
   No. 1:08-cv-05959 (N.D. Ill. Dec. 21, 2011) ................................................ 22
*Perez v. Asurion Co.*
   501 F. Supp. 2d at 1380 ............................................................. 10, 14, 15
*Phillips Randolph Enters. LLC v. Rice Fields*
   No. 06 C 4968, 2007 U.S. Dist. LEXIS 3027 (N.D. Ill. Jan. 11, 2007) ....................... 12
*Poertner v. Gillette Company*
   14-13882 (11th Cir. July 16, 2015) ....................................................... 17
*Saf-T-Gard v Seiko*
   09 C 776  (N.D. Ill. 2011) ................................................................. 4
*Spillman v. RPM Pizza, LLC*
   No. 10-349, 2013 U.S. Dist. LEXIS 72947 (M.D. La. May 23, 2013) ......................... 2, 13
*Stalcup v. Schlage Lock Co.*
   505 F.Supp.2d 704, (D. Colo. 2007) ......................................................... 20
*Steinfeld v. Discover Fin. Servs.*
   No. 12-1118, 2014 U.S. Dist. LEXIS 44855 (N.D. Cal. Mar. 31, 2014) ........................ 13
*U.S. v. Alabama*
   271 F. App'x 896, 901 (11th Cir. 2008) .................................................... 5, 6
*Warnick v. Dish Network, LLC*
   No. 1:12-cv-1952 (D. Colo. 2014) .......................................................... 11
*Warren v. City of Tampa*
   693 F.Supp. 1051 (M.D. Fla. 1988) ......................................................... 8, 9
*Waters v. Int'l Precious Metals Corp.*
   190 F.3d 1291 (11th Cir.1999) ............................................................. 17
*Wolff v. Cash 4 Titles*
   No. 03-cv-22778, 2012 WL 5290155 (S.D. Fla. Sept. 26, 2012) ............................. 17
*Wood Dale Chiropractic, Ltd. V. DrFirst.com, Inc.*
   1:12-cv-00780, (N.D. Ill) ................................................................... 2
*Yates v. Mobile Cnty. Pers. Bd.*
   719 F.2d 1530, (11th Cir. 1983) ........................................................... 19

## Other Authorities

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, https://www.fcc.gov/document/tcpa-omnibus-declaratory-ruling-and-order
   (July 10, 2015) ............................................................................ 20

## I.      INTRODUCTION

Plaintiff, Aja De Los Santos, individually and as representative of the Settlement Class Members, submits this motion and memorandum in support of final approval of the class action settlement with Defendant, Millward Brown, Inc. ("Millward") that was preliminarily approved by the Court February 10, 2015.  [ECF No. 77].

This proposed class action settlement concerns allegations that Millward placed automated "market research" calls to the wireless telephones of consumers through the use of an automatic telephone dialing system, without the prior consent of Plaintiff and the putative class members, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* (the "TCPA"). Millward vigorously denies these allegations.

Both Parties were mindful of the benefits to each party, the putative class, and the Court in addressing the prospect of settlement in good faith, as soon as practicable in the course of litigation. However, it was not until after Millward's motion to dismiss was denied, not until after exchanging robust discovery, and not until after two separate mediation before an experienced mediator that this proposed settlement was reached.  As a result of the mediations, Plaintiff and Millward were able to reach a settlement, which took over five months itself to negotiate.  A true and accurate copy of the Settlement Agreement and Release ("Agreement") attached hereto as *Appendix 1.*

Under the Agreement, Millward has agreed to pay Eleven Million Dollars ($11,000,000.00) for the benefit of the Settlement Class who submit claims, to cover Settlement Notice and Administrative Expenses, the Approved Fee Award, and the Approved Incentive Award for the Class Representative. The settlement will provide each Settlement Class Member who submitted a timely, valid Claim Form fifty dollars ($50.00).

The Court set April 27, 2015 for persons who were sent the initial notice and July 31, 2015 for persons sent the supplemental notice as the dates to submit exclusions or objections.  [ECF No. 77, ¶14; ECF No. 81, ¶¶1-2].  No one has objected to the Agreement and there have only been twenty-two requests for exclusion (or .0044%).  *See* Declaration of James R. Prutsman, MBA in Support of Plaintiff's Motion for Final Approval at ¶¶17-18.

Furthermore, the Agreement includes non-monetary relief.  As set forth in Section 3 of the Agreement, Millward has changed its practices to avoid non-compliance with the TCPA by eliminating its telephone calling systems, and any third party vendors Millward engages for

telephone survey research are required to ensure compliance with the TCPA.  The nonmonetary relief is significant and benefits not only the class, but society as a whole.  *Appendix 3* at p. 10. The economic value of the nonmonetary relief has been valued at over Forty Two million dollars. *Id*. at p.11.  Although a significant benefit, Class Counsel has not sought fees on any such value.

In this case, 7,599 persons submitted Claim Forms.  *See Appendix 2* at ¶16.  That is 1.59% of the class who received direct notice and is within the range of similar TCPA class cases that have been granted final approval.[1]  Further, unlike many defendants who made calls that were alleged to violate the TCPA, Millward is not a household name and it was making a small number of survey calls per number.  In fact, many of the calls Plaintiff's counsel's office received from class members were from people who did not recognize the Defendant, which may have contributed to the claim rate. .  *See Appendix 4* Keogh Decl., ¶34.  Regardless, whether a claim was submitted, the class benefited from both the non-monetary relief and availability of the fund.

As shown below, the Agreement easily meets the standards for final approval.  In granting preliminary approval, the Court found subject to final approval that the Agreement is fair, reasonable, adequate, and meriting notice to the class.  [ECF No. 72, ¶2].  Nothing has changed to alter that conclusion.  The Agreement is the product of arm's length negotiations between Defendant and experienced Class Counsel, and was reached with the guidance of Rodney Max who is well regarded as a skilled mediator.  As a result, the Agreement is presumptively fair, reasonable and adequate.  *In re Sturm, Ruger & Co., Inc.*, No. 09cv1293, 2012 U.S. Dist. LEXIS 116930 at *12 (D. Conn. Aug. 20, 2012) ("the settlement was reached by experienced, fully-informed counsel after arm's length negotiations with the assistance of a mediator and therefore the parties are entitled to a presumption that the settlement was fair, reasonable and adequate.")

This presumption is bolstered by the Agreement's terms.  The non-monetary and monetary relief secured on behalf of the class are significant and warrant final approval.

## II.    SUMMARY OF THE LITIGATION, MEDIATION & SETTLEMENT

On July 11, 2013, Plaintiff, Aja De Los Santos, commenced this class action against

---

[1] *See Wood Dale Chiropractic, Ltd. V. DrFirst.com, Inc.*, 1:12-cv-00780, (N.D. Ill) (1.97 % of the class made claims); *North Suburban Chiropractic Clinic, Ltd v. Zydus Pharmaceuticals (USA) Inc.,* 1:13-cv-03105 (N.D. Ill.) (.13% of the class made claims); *North Suburban Chiropractic Clinic Ltd. V. Rx Security, Inc.,* 1:13-cv-06897 (N.D. Ill.) .53% of the class made claims); *Agne v. Papa John's International Inc. et al*, 2:10-cv-01139 (D. Wa.) (1.52% of the class made claims); *Spillman v. RPM Pizza, LLC et al*, 10-cv-0349 (M.D. La.) (.07% of the class made claims).

Millward, by filing her First Amended Class Action Complaint, alleging that Millward violated the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.,* ("TCPA") by using an automatic telephone dialing system to place automated "market research" calls to the cellular telephones of consumers, without the prior consent of Plaintiff and the putative class members. [ECF No. 4, 5]. Millward moved for dismissal of Plaintiff's Complaint. [ECF No. 15]. Plaintiff filed her Second Amended Class Action Complaint to address any alleged technical deficiencies and to pare down the issues for consideration by the Court in the Motion to Dismiss. [ECF No. 25]. Millward again moved for dismissal. [ECF No. 28].

Based on Millward's constitutional challenge to the TCPA in its motion to dismiss, the United States intervened in support of the TCPA. [ECF No. 53, 54]. Millward filed a Reply to the United States' Memorandum of Law in Support of the TCPA. [ECF No. 63].

On June 16, 2014, the parties attended a full day mediation session before a private, third-party mediator, Rodney Max of Upchurch, Watson, White, and Max.[2] The parties did not reach a settlement, but discussed matters which would advance their ability to engage in meaningful settlement negotiations. Following that initial mediation, negotiations continued by a series of conference calls with the mediator between June 16, 2014 and July 21, 2014. On June 30, 2014 the Court denied Millward's Motion to Dismiss. [ECF No. 66].

On July 21, 2014, the parties attended a second full day mediation before Mr. Max. As a result of this mediation, the Parties reached a preliminary settlement of the matter. The parties spent over five months negotiating the final terms of the agreement and drafting the necessary papers to affect their understanding of the Settlement. A copy of the settlement agreement is attached as *Appendix 1*.

### SETTLEMENT TERMS

The Settlement Class is defined as follows:

> All persons who, on or after July 9, 2009 through the date of Preliminary Approval, received one or more non-emergency contacts from Millward or any of its agents, parents, affiliates or subsidiaries, to their cellular telephone through the use of an automatic telephone dialing system and/or an artificial or prerecorded voice for which they did not consent.

---

[2] Rodney Max is a principal at Upchurch, Watson, White, and Max. Max is a Florida Supreme Court Certified Circuit Civil Mediator having conducted more than 4,000 mediations.

*Appendix 1*, §1.36 .

The Agreement provides in paragraph 1.1 that Millward shall commit funds of up to Eleven Million Dollars ($11,000,000.00) for the benefit of the Class.   A Settlement Class Member who properly and timely submits a Claim Form for an Approved Claim will receive $50 from the Net Settlement Fund. In addition to the `class fund`, Millward has agreed to the following:

> A.        As a result of this lawsuit, Millward has changed its practice to avoid non-compliance with the TCPA.  It has eliminated its telephone calling systems, and any third party vendors Millward engages for telephonic survey research are required to ensure compliance with the TCPA. *Appendix 1*, § 2.4.

> B.        Millward has agreed to pay the cost of the Notice Plan, costs for the Settlement Website and postage.  The notice costs to date are $347,064, with approximately $34,000 estimated in further costs for distribution and finalization. *Appendix 2* at ¶19.

> C.        Subject to court approval, Plaintiff shall, in addition to any recovery that he is entitled to as a Settlement Class Member, be awarded an Incentive Award not to exceed of five thousand dollars ($5,000.00)[3].

> **D.        Payment of Attorneys' Fees:** Under the Agreement, and subject to Court approval, the Parties have agreed that Plaintiff's Counsel may apply to this Court for awards of attorneys' fees for 25% of the settlement fund, a sum not to exceed two million seven hundred fifty thousand ($2,750,000.00) in attorneys' fees and costs associated with the Action.  The Postcard Notice, Website and Long Form Notice all informed potential Settlement Class Members of both the exact dollar amount and percentage that Class Counsel is requesting.  As noted above, no class member has objected.

---

[3] *See* Albert Conte and Herbert B. Newberg, 4 NEWBERG ON CLASS ACTIONS, §11.38 (4th ed.). Indeed, "since without the named plaintiff there can be no class action, such compensation as may be necessary to induce him to participate in the suit could be thought the equivalent of the lawyers' non-legal but essential case specific expenses." Service awards for named plaintiffs in TCPA class actions have been regularly granted. *Saf-T-Gard v Seiko*, 09 C 776 (N.D. Ill. 2011) (Judge Bucklo) ($12,500 to named plaintiff in TCPA class); *Gibson & Company Insurance Brokers, Inc. v. QFA Royalties LLC.*, 06-cv-05849-PSG-PLA Document 212 (C.D. Ca. 2009) ($15,000 to the named plaintiff for service payment in TCPA class settlement); *Nicholson v Hooters of Augusta, Inc.*, 95-RCCV- 616 (Richmond County, Ga. April 25, 2001) ($15,000 to the named plaintiff in a TCPA class action for service payment).

A. **Release**. In exchange for the relief described above, the release is applicable to all Non-Excluded Class Members and releases any and all claims as more fully set forth in the Settlement Agreement, arising from Millward's placement of non-emergency telephone calls to a cellular telephone through the use of an automatic telephone dialing system and/or an artificial or prerecorded voice. The full scope of the release, and its exact terms, is fully set forth at Sections 1.30 and 3 of the Parties' Settlement Agreement and Release, hereto attached as *Appendix 1* and set forth in ECF No. 75.

III.     **NOTICE PROVIDED WAS MORE THAN SUFFICIENT.**

Federal Rule 23 requires a court to direct to class members "the best notice that is practicable under the circumstances" describing, among other things, the action, the class certified, and class members' right to exclude themselves. Fed. R. Civ. P. 23(c)(2)(B). Further, before granting final approval to a proposed class settlement, the court must "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Finally, the Due Process Clause also guarantees unnamed class members the right to notice of a class settlement. *U.S. v. Alabama*, 271 F. App'x 896, 901 (11th Cir. 2008).

To satisfy these requirements, notice of a class settlement must "apprise class members of the terms of the settlement agreement in a manner that allows class members to make their own determination regarding whether the settlement serves their interests." *See Alabama*, 271 F. App'x at 901; *see also In re CP Ships Ltd. Sec. Litig.*, 578 F.3d 1306, 1314 (11th Cir. 2009) *abrogated on other grounds by Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010) ("Notice must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"), *quoting Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

Neither Rule 23 nor Due Process require all class members to receive actual notice. *See Juris v. Inamed Corp.*, 685 F.3d 1294, 1321 (11th Cir. 2012). In determining the sufficiency of the class notice, courts "look solely to the language of the notices and the manner of their distribution." *Alabama*, 271 F. App'x at 901, *quoting Adams v. Southern Farm Bureau Life Ins. Co.*, 493 F.3d 1276, 1286 (11th Cir. 2007). Moreover, the notice "need not include every material fact or be overly detailed." *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1239 (11th Cir. 2011) (internal quotations omitted).

10

The notice plan approved by the Court provided the best notice practicable.  First, the plan required the Notice and Claims Administrator to send the Postcard Notice and a Claim Form via regular mail to potential Settlement Class Members identified by using a reverse look-up service to determine the contact information for each unique number.  [ECF 77, at ¶¶11, 13].

Second, the plan required the Notice and Claims Administrator to erect a settlement website that served as a supplement for conventional notice, provided links to the Agreement and enabled Settlement Class Members to make on-line submissions of their claims.  [ECF No. 77, ¶¶11, 13].  The notices also provided a toll free number.  *Appendix 2*, at *Exhibits B-C*.

The notices gave Settlement Class Members a detailed explanation of the Agreement, including the relief, the releases and amount of the proposed Incentive Award and the costs and exact amount of Class Counsel Legal Fees to be requested, to enable them to evaluate their options and make an informed decision.  In approving the Notice and Claims Procedures, the Court found: "The Notice, as directed in this Order, constitutes the best notice practicable under the unique circumstances of this case and is reasonably calculated to apprise the members of the Settlement Class of the pendency of this Action and of their right to object to the Settlement or exclude themselves from the Settlement Case. The Court further finds that the Notice program is reasonable, that it constitutes due, adequate and sufficient notice to all persons entitled to receive such notice and that it meets the requirements of due process and of Federal Rule of Civil Procedure 23." [ECF No. 77, ¶13].  These conclusions remain correct.

The Notice and Claims Administrator followed the Court-approved Notice and Claims Procedures.  Pursuant to the Court's orders, Millward provided a list of class members to the Claims Administrator containing a list of 561,857 cellular telephone numbers that were at issue.

As directed by the Settlement Agreement section 4.2, the claims administrator worked with a national data provider to perform an initial reverse lookup to obtain the name and address for the owner for each cell phone number.  *Appendix 2*, at ¶3.  The initial search returned 515,960 names and addresses.  *Id*.  The claims administrator worked with a subsequent national data provider to perform a second reverse lookup on the remaining 45,897 cell phone numbers.  *Id*.  The secondary source was able to identify names and addresses for an additional 16,299 class members.  *Id*. Direct individual notice of the Agreement was mailed to 532,259 class members on March 12, 2015.  *Id*., at ¶9.  Of these notices, 2,770 were returned as undeliverable were re-mailed to

forwarding addresses. *Id.*, at ¶10. Subsequent to this re-mailing, 14 notices were returned by UPS as undeliverable with a forwarding address. *Id.*

The claims administrator received 47,572 returned as undeliverable without a forwarding address. *Id.*, at ¶11. A secondary search was utilized and an alternate address was found for 22,130 records. *Id.* The claims administrator determined that 8,460 of the returned records had been sent with the name "Null," due to the fact that they were businesses. *Id.*, at ¶12. As the parties informed the Court in their Stipulated Motion to Extend the Fairness Hearing to Allow Supplemental Notice (ECF No. 80), a total of 30,590 known class members either had their notice returned as undeliverable or were sent notices address to "Null" (as they were businesses). *Appendix 2*, at ¶¶11-12. This Court granted this motion to allow supplemental notice. [ECF No. 81]. On June 12, 2015, these 30,588 notices were mailed.[4] *Appendix 2*, at ¶13. Additionally, a copy of the Court's May 30, 2015 Order was posted to the Class Settlement Website. *Id.* at ¶14.

The Notice and Claims Administrator set up the Settlement Website as well as a Call-In Line for class members to call with any questions as well as request a claim form and long form notice be mailed to them. As of August 17, 2015, the website has been visited 21,860 times by 18,461 unique visitors. *Appendix 2* at ¶14. The claims administrator has handled a total of 4,061 phone calls at the 800 number. *Id.* at ¶15. In addition, CAFA notice and supplemental CAFA notice was sent as required. *Id.* at ¶4, *see Id.* at *Exhibit A*.

Class Members who were sent the initial notice had until April 27, 2015 to request exclusion, object, or submit a Claim Form. [ECF No. 77, ¶¶14, 20]. Class Members who were sent supplemental notice had until July 31, 2015 to request exclusion, object, or submit a Claim Form. [ECF No. 81 at ¶1(a)]. As noted above, so far 7,599 Settlement Class Members filed Claim Forms, only twenty-two requested exclusion and no objections were filed. *Appendix 2* at ¶16-18. The notice complied with the court-approved plan, satisfied Rule 23 and Due Process, and fully apprised the Settlement Class of all material terms as well as how to obtain additional information.

## IV.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, AND THUS IT MERITS FINAL APPROVAL

Judicial and public policy favor the voluntary settlement of complex class action litigation. *In*

---

[4] Two notices were not sent because it was determined that the address corresponded to a class member who had already excluded themselves from the settlement.

*re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits"); *Warren v. City of Tampa*, 693 F. Supp. 1051, 1054 (M.D. Fla. 1988) ("[S]ettlements are highly favored in the law."), *aff'd*, 893 F.2d 347 (11th Cir. 1989). With a settlement, the class members are ensured a benefit as opposed to the "mere possibility of recovery at some indefinite time in the future." *In re Domestic Air Transport. Antitrust Litig.*, 148 F.R.D. 297, 306 (N.D. Ga. 1993).

Although approval of a settlement is a matter within the Court's discretion, some deference should be given to the consensual decision of the Parties. *See Warren*, 693 F. Supp. at 1054 ("affording great weight to the recommendations of counsel for both parties, given their considerable experience in this type of litigation."). Ultimately, the Court should approve a class action settlement if it is fair, adequate, and reasonable, and not the product of collusion. *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).

When conducting this analysis, the Court "should always review the proposed settlement in light of the strong judicial policy that favors settlements." *In re Sunbeam Sec. Litig.*, 176 F. Supp.2d 1323, 1329 (S.D. Fla. 2001). In determining whether a settlement is "fair, adequate, and reasonable," the following factors are generally considered:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Bennett*, 737 F.2d at 986. In addition, the Court makes an inquiry into "whether the settlement was procured by collusion among the parties or was the result of arm's length and informed bargaining." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1315 (S.D. Fla. 2005); *see also In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d at 1329 ("In determining whether to approve a proposed settlement, the cardinal rule is that the District Court must find that the settlement is fair, adequate and reasonable and is not the product of collusion between the parties.")

Ultimately, "[a] settlement is fair, reasonable and adequate when 'the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued.'" *In re Checking Acct. Overdraft Litig.*, 830 F. Supp.2d 1330, 1344 (S.D. Fla. 2011) (citation omitted).

Here, the Agreement easily passes both tests, having been the product of arm's length, informed negotiations between the Parties with the assistance of a neutral mediator, and satisfying each of the Eleventh Circuit's *Bennett* factors.

### A.   The Agreement Is the Result of Arm's Length Negotiation between the Parties with the Assistance of an Experienced Mediator.

The context in which the Agreement was reached confirms that it was the result of arm's length and informed negotiations among the Parties, and not collusion.

To start, the Agreement only came about after the motion to dismiss was denied, intervention by the government as to the constitutional question and engaging in formal and informal discovery.  To reach that point, the Parties conducted two separate in-person mediation sessions and multiple telephonic conference calls by a highly experienced and well-respected neutral, Rodney Max.  S*ee Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) ("The fact that the entire mediation was conducted under the auspices of …. a highly experienced mediator, lends further support to the absence of collusion."); *see also Checking Account Overdraft Litig.*, 275 F.R.D. at 662 (finding no collusion where settlement was reached with capable and experienced counsel and with the assistance of a well-qualified and experienced mediator). Moreover, the Parties reached the Settlement through experienced counsel, who had at their disposal ample information about the case facts to evaluate the terms of any proposed agreement, so as to reach a fair compromise.  *See Appendix 4* Keogh Decl., ¶24 *Appendix 5* Owens Decl., ¶¶26-28 and *Appendix 6* Lusskin Decl., ¶¶12-14.

As such, it is clear the Agreement is the result of arm's length and informed negotiation between the Parties, not collusion, and thus the Court should not hesitate to approve it.

### B.   The Agreement Satisfies Each of the Eleventh Circuit's *Bennett* Factors.

In addition to being the result of arm's length negotiations, the Agreement also satisfies each of the *Bennett* factors.  While the Eleventh Circuit instructs district courts to consider the *Bennett* factors, "[i]n evaluating these considerations, the district court should not try the case on the merits."  *Perez v. Asurion Co.*, 501 F. Supp.2d 1360, 1380 (S.D. Fla. 2007) (citation omitted). "Rather, the court 'must rely upon the judgment of experienced counsel and, absent fraud, 'should be hesitant to substitute its own judgment for that of counsel.'"  *Id.*  Here, as explained below, each of the *Bennett* factors weighs in favor of approving the Agreement.

14

### 1.      Likelihood of Success at Trial

The first *Bennett* factor to consider in determining whether a settlement is fair, reasonable, and adequate is the likelihood of success at trial.  "The likelihood of success on the merits is weighed against the amount and form of relief contained in the settlement."  *Lipuma*, 406 F. Supp.2d at 1319.  Where success at trial is not certain for a plaintiff, this factor weighs in favor of approving the settlement.  *See Newman v. Sun Capital Corp.*, No. 09-cv-445, 2012 U.S. Dist. LEXIS 121843 at *30 (M.D. Fla. Aug. 28, 2012).

Here, Plaintiff's and the Settlement Class Members' ultimate success at trial is far from guaranteed.  Plaintiff's counsel is confident in the strength of the claims alleged in the Complaint and that Plaintiff would ultimately prevail at trial.  Notwithstanding the foregoing, litigation is inherently unpredictable and the outcome of a trial is never guaranteed.  Indeed, Plaintiff faced significant risk in taking this matter to trial, including the possibility that the case would be defeated in dispositive pre-trial motions practice, the Court would deny class certification, or that the result at trial would be in Millward's favor.  *See Appendix 4* Keogh Decl., ¶¶28-32.

These risks include arguments relating to class ascertainability, typicality, individual questions of consent, and whether Millward used a telephone system that was in fact an automatic telephone dialing system.  *See Warnick v. Dish Network*, LLC, No. 1:12-cv-1952, Document No. 259 (D. Colo. Oct. 30, 2014) (denying class certification with prejudice).  *See also Jamison v First Credit Servs., Inc.*, No. 1:12-cv-04415, Document No. 120 (N.D. Ill. July 29, 2013) (denying the motion for reconsideration of class denial).

Further, at least some courts view awards of aggregate, statutory damages with skepticism and reduce such awards—even after a plaintiff has prevailed on the merits—on due process grounds.  *See, e.g., Aliano v. Joe Caputo & Sons - Algonquin, Inc.,* No. 09 C 910, 2011 U.S. Dist. LEXIS 48323, at *13 (N.D. Ill. May 5, 2011) ("[T]he Court cannot fathom how the minimum statutory damages award for willful FACTA violations in this case — between $100 and $1,000 per violation—would not violate Defendant's due process rights . . . . Such an award, although authorized by statute, would be shocking, grossly excessive, and punitive in nature.")[5].

In addition, Plaintiff recognizes the expense, duration, and complexity of protracted

---

[5] *But see Phillips Randolph Enters., LLC v. Rice Fields*, No. 06 C 4968, 2007 U.S. Dist. LEXIS 3027, at *7-8 (N.D. Ill. Jan. 11, 2007) ("Contrary to [defendant's] implicit position, the Due Process clause of the 5th Amendment does not impose upon Congress an obligation to make illegal behavior affordable, particularly for multiple violations.").

litigation would be substantial and possibly require further briefing on numerous substantive issues, and extensive trial preparation and appeal.  Against the inherent uncertainty raised by these issues is the concrete nature of the relief afforded under the Agreement, where each Class Member to submit a valid and timely Claim Form will recover $50.  As such, because success at trial is far from certain and the value of the Agreement is unquestionably strong, the first *Bennett* factor weighs in favor of approving the Agreement.

### 2. Range of Possible Recovery and the Point at which the Agreement Is Fair, Reasonable, and Adequate

Analysis of the second and third *Bennett* factors—the range of possible recovery and the point in that range at which a settlement is fair, adequate and reasonable—are often combined.  *In re Sunbeam*, 176 F. Supp.2d at 1331.  As in most litigation, "[t]he range of potential recovery 'spans from a finding of non-liability through varying levels of injunctive relief,' in addition to any monetary benefits to class members." *Figueroa v. Sharper Image Co.*, 517 F. Supp.2d 1292, 1326 (S.D. Fla. 2007), *quoting Lipuma*, 406 F. Supp.2d at 1322.  However, "the Court's role is not to engage in a claim-by-claim, dollar-by-dollar evaluation, but rather, to evaluate the proposed settlement in its totality." *Figueroa*, 517 F. Supp.2d at 1326.

The monetary relief secured on behalf of the Settlement Class is substantial.  Each Class Member submitting a timely and valid claim will receive $50.  The Agreement's terms are also fair, reasonable, and adequate when compared to other TCPA class settlements.[6]  The relief available to each Settlement Class Member here easily surpasses the potential per-class-member benefit conferred in other TCPA class settlements that have received final approval.  *See In re Enhanced Recovery Co.*, 13-md-2398-RBD-GJK (M.D. Fla. July 29, 2014) at DE 123, p. 1 (only injunctive relief for class) and ECF No. 124 (settlement granted final approval); *In re Capital One TCPA Litigation*, 12-cv-10064 (MDL No. 2416) (N.D. Ill. Feb. 12, 2015) (Holderman J.) (granting final approval were each claimant would be awarded $39.66); *Steinfeld v. Discover Fin. Servs.*, No. 12-1118, 2014 U.S. Dist. LEXIS 44855 at *4 and *11-*12 (N.D. Cal. Mar. 31, 2014) ($46.98

---

[6] The TCPA provides a potential recovery of $500 and $1,500 if willful, but this does not take into consideration the risk of losing.  Factoring in that risk in settlement necessitates a discounted recovery.  As shown here, many courts have approved settlements providing a much lower per-class member benefit.

to each claimant)[7].

The non-monetary relief secured on behalf of the Settlement Class is also significant and may be more significant than the monetary relief. As set forth in Section 3 of the Agreement, Millward has changed its practices to avoid non-compliance with the TCPA by eliminating its telephone calling systems, and any third party vendors Millward engages for telephone survey research are required to ensure compliance with the TCPA. The nonmonetary relief has been valued at over forty-two million dollars ($42,283,627). *Appendix 3*.

As such, the Agreement is well within the range of what is fair, adequate and reasonable for a TCPA Settlement of this magnitude. Thus, the second and third *Bennett* factors support approval.

### 3.     The Complexity and Expense of Further Litigation

The next factor is the complexity and expense of further litigation. In evaluating this factor, courts "should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." *Lipuma*, 406 F. Supp.2d at 1323 (citation omitted). "The law favors compromises in large part because they are often a speedy and efficient resolution of long, complex, and expensive litigation." *Perez*, 501 F. Supp.2d at 1381, *quoting Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 543, 543 (S.D. Fla. 1988).

This factor favors approving the Agreement because the expense and complexity of further litigation would be substantial. It would require pretrial motion practice, a final pretrial order and final pretrial conference, and conducting a trial. If the Court were to grant class certification or grant summary judgment in Defendant's favor then, given the stakes, the losing side would likely seek relief from the Eleventh Circuit. In either case, continued litigation would delay the case's resolution, impose additional unnecessary expense on both sides, and consume substantial additional judicial resources. When, as here, additional costs and delay are likely to be incurred absent a settlement, "it [is] proper to take the bird in the hand instead of a prospective flock in the

---

[7] *Grant v. Capital Mgmt. Servs.*, No. 10-cv-2471, 2014 U.S. Dist. LEXIS 29836 at *10 (S.D. Cal. Mar. 5, 2014) (injunctive relief only – no monetary relief to the class); *Spillman v. RPM Pizza, LLC*, No. 10-349, 2013 U.S. Dist. LEXIS 72947 at *2, *9 (M.D. La. May 23, 2013) ($9,750,000 to cover claims of over 1,400,000 class members); *Arthur v. Sallie Mae*, No. C10-198, 2012 U.S. Dist. LEXIS 3313 at *10, *20 (W.D. Wash. Jan. 10, 2012) (preliminarily approving settlement of $24,150,000 for class of 8,000,000 members), final approval granted at 2012 U.S. Dist. LEXIS 132413 (W.D. Wash Sept. 17, 2012); *Adams v. AllianceOne Receivables Mgmt.*, No. 08-cv-248 (S.D. Cal. Sept. 28, 2012) ($9 million for 6,079,411 class members, see DE 109 at 10, 116 at 6, and 137).

bush."   *Lipuma*, 406 F. Supp.2d at 1323, *quoting In re Shell Oil Refinery,* 155 F.R.D. 552, 560 (E.D.La. 1993); *see also Perez*, 501 F. Supp.2d at 1381 ("With the uncertainties inherent in pursuing trial and appeal of this case, combined with the delays and complexities presented by the nature of the case, the benefits of a settlement are clear.")  In sum, the complexity, expense, and duration of litigation favors the approval of this Agreement.

### 4.      Substance and Amount of Opposition to Agreement

The next *Bennett* factor is the substance and amount of opposition to the Agreement.   Here, there is not a single objection and only twenty-two class members requested exclusion.  *Appendix 2* at ¶¶17-18.  The fact that there are no objections and the comprehensive notice provided to the class, demonstrates that class members find the agreement reasonable and fair, which strongly favors the Agreement.    *See Lipuma*, 406 F. Supp.2d at 1324 ("a low percentage of objections points to the reasonableness of a proposed settlement and supports its approval."); *Allapattah Servs., Inc. v. Exxon Corp.*, No. 91-cv-986, 2006 U.S. Dist. LEXIS 88347 at *44 (S.D. Fla. Apr. 7, 2006) ("I infer from [the] absence of a significant number of objections that the majority of the Class found [the settlement agreement] reasonable and fair.").

### 5.      Stage of Proceedings at which Settlement Achieved

The final *Bennett* factor looks to the stage of proceedings at which the settlement was achieved.  This factor is used "to ensure that the plaintiffs have access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of the settlement against further litigation."   *Perez*, 501 F. Supp.2d at 1383; *see also Access Now, Inc. v. Claire's Stores, Inc.*, No. 00-cv-14017, 2002 U.S. Dist. LEXIS 28975 at *21 (S.D. Fla. May 7, 2002) ("Because the parties have expended much effort in analyzing the issues, this Court should find that the parties are at a proper juncture with sufficient information to settle this action."); *In re Sunbeam*, 176 F. Supp.2d at 1332 ("Obviously, the case had progressed to a point where each side was well aware of the other side's position and the merits thereof.  This factor weighs in favor of the Court finding the proposed settlement to be fair, adequate, and reasonable.")

Here, the Agreement was not reached until after an exchange of discovery, ruling on the motion to dismiss and not until after two full days of mediation.  Class Counsel ensured they had sufficient information about the allegations of the complaint, the size of the Settlement Class, and the range of the Settlement Class's potential damages.  Hence, there should be no question that, by

18

the time the Agreement was reached, Class Counsel had enough information to sufficiently evaluate the strength of the claims of the Settlement Class and weigh the benefits of the Agreement against continued litigation.    The stage of proceedings factor thus weighs in favor of approval as well.

## V.    THE COST AND ATTORNEY FEE AMOUNT IS REASONABLE

In the Eleventh Circuit, "it is well established that when a representative party has conferred a substantial benefit upon a class, counsel is entitled to an allowance of attorneys' fees based upon the benefit obtained."    *In re Checking Acct. Overdraft Litig.*, 830 F. Supp.2d at 1358, *citing Camden I Condo Ass'n v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991) and *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).

Like the agreement on the relief to be provided to the class, the Parties' subsequent agreement on the cost and attorney fee award stems from the last mediation with Mr. Max. Moreover, while it is within the Court's discretion to determine the reasonableness of the proposed award, negotiated cost and attorney fee awards in class action settlements are strongly encouraged. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("Ideally, of course, litigants will settle the amount of the fee."); *accord Cohn v. Nelson*, 375 F. Supp. 2d 844, 854 (E.D. Mo. 2005) ("where, as here, the parties have agreed on the amount of attorneys' fees and expenses, courts give the parties' agreement substantial deference.")

The reasonableness of this figure is confirmed by examining it both as a percentage of the total Settlement, as well as the various factors established for evaluating attorney fee requests (including the "Johnson" factors). *Camden I Condo. Ass'n*, 946 F.2d at 774-775.

### A.  The Cost and Fee Amount Is Reasonable as a Percentage of the Total Settlement.

"The majority of common fund fee awards fall between 20% to 30% of the fund." *Camden I Condo. Ass'n*, 946 F.2d at 774.   Courts regard this range as the "bench mark" range of reasonableness. *See Id.* at 775. The benchmark, however, is only that.  The award may exceed it. *Camden I Condo. Ass'n*, 946 F.2d at 774-775 (as a general rule, "an upper limit is 50%"); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295–96 (11th Cir.1999) (affirmed class attorneys' award of 33.3%).  *See, e.g., Wolff v. Cash 4 Titles*, No. 03-cv-22778, 2012 WL 5290155, at *6 (S.D. Fla. Sept. 26, 2012) (collecting cases and concluding that 33% is consistent with the market rate in class actions).

19

The mediated cost and fee award here easily satisfies that criteria. The Postcard Notice, Long Form Notice and Website all specifically set out both the amount and corresponding percentage of the attorney fees that were to be requested. The notices stated "…Class Counsel's Fees not to exceed 25% of the Aggregate Settlement Fund, which is $2,750,000." *Appendix 2*, at *Exhibits B-C*. The requested fee is inclusive of costs and does not seek fees from the value of the non-monetary benefits of the class. This alone establishes its reasonableness. *See Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1244-1245 (11th Cir. 2011) (cost and fee award reasonable in part because "the $1.5 million payment is designed to compensate the class counsel for the non-monetary benefits they achieved for the class.").

Recently, the Eleventh Circuit affirmed approval of $5.68 million in attorney fees when the class only claimed $344,850 and there was nonmonetary relief. *Poertner v. Gillette Company*, 14-13882 (11th Cir. July 16, 2015) (Unpublished). The Eleventh Circuit looked at the amount made available, the value of all of the factors and held:

> While no published opinion of ours extends Camden I's percentage-of-recovery rule to learned treatise aptly illustrates, properly understood "[a] claims-made settlement is . . . the functional equivalent of a common fund settlement where the unclaimed funds revert to the defendant"; indeed, the two types of settlements are "fully synonymous." 4 Rubenstein, supra, § 13:7. General of the United States and the attorneys general of each of the 50 states, the District of Columbia, and the United States Territories.

The Eleventh's Circuit's holding in *Gillette* is in accord with *Boeing Co. v. Van Gemert*, *444 U.S. 472*, 478 (1980). In *Boeing*, the Supreme Court rejected the notation that the fees should be limited to the amount claimed[8]. Instead, the Supreme Court held that fees should be based on the amount made available. The Court specifically held:

> Their right to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel. Unless absentees contribute to the payment of attorney's fees incurred on their behalves, they will pay nothing for the creation of the fund and their representatives may bear additional costs. The judgment entered by the District Court and affirmed by the Court of Appeals rectifies this inequity by requiring every member of the class to share attorney's fees to the same extent that he can share the recovery Since the benefits of the class recovery have been "traced with some accuracy" and the costs of recovery have been "shifted with some exactitude to those

---

[8] "Boeing appealed only one provision of the judgment. It claimed that attorney's fees could not be awarded from the unclaimed portion of the judgment fund for at least two reasons. First, the equitable doctrine that allows the assessment of attorney's fees against a common fund created by the lawyers' efforts was inapposite because the money in the judgment fund would not benefit those class members who failed to claim it." *Id* at 480.

benefiting."

*Id* at 751.  As such, Plaintiff's request, which does not seek a percentage of the nonmonetary relief, is reasonable.

### B.  The Cost and Fee Amount Is Also Reasonable under the *Johnson* Factors.

In cases where fees are sought in excess of 25%, the Eleventh Circuit endorses using the factors articulated *Johnson v. Georgia Highway Expr., Inc*., 488 F.2d 714 (5th Cir. 1974), to confirm the reasonableness of fees and costs. *See Camden I Condo. Ass'n*, 946 F.2d at 775. The "*Johnson* factors" are (1) the time and labor required[9]; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney; (5) the customary fee; (6) whether the fee is contingent; (7) the time limitations imposed; (8) the amount involved and results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Camden I*, 946 F.2d at 772.  Here, however, the Parties' settlement agreement limits the amount of attorneys' fees below this threshold to only 25% of the Settlement.  *Faught*, 668 F.3d at 1242 (11th Cir. 2011) ("the majority of fees in these cases are reasonable where they fall between 20-25% of the claims"). Yet, even if the *Johnson* factors applied, they further establish the reasonableness of the cost and fees.

### 1.  The Time and Labor Required, Preclusion from Other Employment and the Time Limits Imposed Justify the Cost and Fee Amount.

The first, fourth, and seventh *Johnson* factors—the time and labor, preclusion of other employment, and time limitations imposed, respectively—are interrelated inquires and each support the reasonableness of the request.  T h i s  c a s e  h a s  b e e n  p e n d i n g  s i n c e 2 0 1 3  a n d  Class Counsel had to engage in substantial litigation against a well-heeled defendant and sophisticated defense counsel to reach the Settlement.

The work needed was extensive.  These efforts required not only work representing Plaintiff and the class without compensation, but various in person and telephonic meetings with the FCC that directly discussed petitions on the definition of an ATDS that if granted would have

---

[9] The Eleventh Circuit made clear in *Camden I* that percentage of the fund is the exclusive method for awarding fees in common fund class actions ... "[and] [t]he lodestar approach should not be imposed through the back door via a 'cross-check.'"  *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1362.

defeated Plaintiff's claim.  See *Appendix 4*, Keogh Decl., ¶29 (numerous in person meetings with FCC staff or commissioner's advisors in Washington D.C. arguing against limiting ATDS to systems that actually dial numbers randomly in the narrowest interpretation.)  To be clear, Class Counsel is not seeking fees or costs for work spent lobbying the FCC, but raises the point to illustrate that this litigation was multifaceted and complex.  In addition, the time spent does not include the work still to come if final approval is granted, which will include supervising the administration of the settlement, answering Settlement Class Member questions, and resolving any issues that arise.

The substantial work necessitated by this case diverted the time and resources from being put into other matters.  *See Yates v. Mobile Cnty. Pers. Bd.*, 719 F.2d 1530, 1535 (11th Cir. 1983) (The expenditure of time necessarily had some adverse impact upon the ability of counsel for plaintiff to accept other work, and this factor should raise the amount of the award.); *see also Stalcup v. Schlage Lock Co.*, 505 F. Supp.2d 704, 708 (D. Colo. 2007) (noting that "the *Johnson* court concluded that priority work that delays a lawyer's other work is entitled to a premium.")

Finally, and perhaps most tellingly, no Settlement Class Member raised any objection to Class Counsel's effort or the cost and fee award proposed here despite the class notices explicitly advising of both the percentage and amount of the fees requested.  Accordingly, the amount of time and labor devoted to this case supports the reasonableness of the cost and fee request.

## 2. The Case Involved Difficult Issues; the Risk of Nonpayment and Not Prevailing on the Claims Was High.

The second, sixth, and tenth *Johnson* factors—the novelty and difficulty of the questions, whether the fee is contingent, and the "undesirability" of the case, respectively—are also interrelated and support the requested cost and fee award.

This case is novel on several levels.  First, in most TCPA claims involving cell phones and text messaging are relatively new and the law as applied to these circumstances is still developing as the FCC just recently ruled on petitions related to the TCPA in its July 10, 2014 Order. *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, https://www.fcc.gov/document/tcpa-omnibus-declaratory-ruling-and-order (July 10, 2015).

In addition, the ability to recover costs and fees in this case has always been contingent on a successful outcome and substantial recovery.  The TCPA does not provide for an award of

attorney fees to a prevailing plaintiff.  The only way to recover a fee is to be part of a large recovery. Counsel had to advance the costs and fees, and risked receiving nothing in return.  This is important because "[a] determination of a fair fee for Class Counsel must include consideration of the contingent nature of the fee, the wholly contingent outlay of out-of-pocket sums by Class Counsel, and the fact that the risks of failure and nonpayment in a class action are extremely high."   *Pinto*, 513 F. Supp.2d at 1339.  Indeed, "[a] contingency fee arrangement often justifies an increase in the award of attorney's fees."  *In re Checking Acc't Overdraft Litig.*, 830 F. Supp.2d at 1364, *quoting In re Sunbeam Sec. Litig.*, 176 F. Supp.2d at 1335.  Accordingly, some courts have observed that "[a]ttorneys' risk is perhaps the foremost factor in determining an appropriate fee award." *Francisco v. Numismatic Guar. Corp.*, No. 06-61677, 2007 U.S. Dist. LEXIS 96618 at *35 (S.D. Fla. Jan. 30, 2007), *citing Pinto,* 513 F. Supp.2d at 1339.

The novelty and contingent nature of the case demonstrate the undesirability of the case. Few lawyers will take on a lawsuit that consumes significant attorney time, involves uncertain questions, and requires the lawyers to advance out-of-pocket costs, and risk getting paid nothing.

Although Class Counsel were able to achieve an excellent result for the class, achieving this outcome was anything but certain when they agreed to take the case, and thus these factors all weigh in favor of approving the mediated cost and fee amount. *See In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1364 ("'Undesirability' and relevant risks must be evaluated from the standpoint of plaintiffs' counsel as of the time they commenced the suit, not retroactively, with the benefit of hindsight"), *citing Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.* 540 F.2d 102, 112 (3d Cir. 1976)).

### 3.   Class Counsel Achieved an Excellent Result for the Settlement Class.

The eighth *Johnson* factor looks to the amount involved in the litigation with particular emphasis on the "monetary results achieved" in the case by class counsel.  *See Allapattah Servs., Inc. v. Exxon Corp*., 454 F. Supp.2d 1185, 1202 (S.D. Fla. 2006).

Here, the parties' mediated Agreement contemplates a Settlement Fund of $11,000,000 for a class of approximately 515,960 persons.  *Appendix 2* at ¶3.  Once again, each class member who submitted a valid claim will receive $50, which as noted above is well within the range of various other TCPA settlements that have been granted final approval.  This factor thus weighs strongly in favor of approving the cost and fee amount.  As shown above, this recovery is significant when

compared to many other TCPA cases that provided a portion of what each claimant will receive.

        While this factor typically focuses on the monetary relief, the non-monetary benefit of the Agreement, must also be considered.  *See Hall v. Cole*, 412 U.S. 1, 5 n.7 (1973) (the right to fees "must logically extend, not only to litigation that confers a monetary benefit on others, but also litigation 'which corrects or prevents an abuse which would be prejudicial to the rights and interests' of those others.")  Once again, the value of the non-monetary relief has been valued at $42,283,627, but Class Counsel is not seeking fees from it.  If they were, the fees sought would amount to only 5.16% of the benefit to the class.  Thus, this factor also supports the agreed cost and fee amount.

### 4.   The Requested Fee is Consistent with Other TCPA Class Settlements.

        The fifth and twelfth *Johnson* factors, the customary fee and awards in similar cases supports approval.  Many similar TCPA class settlements provide for one third of the fund.  *See Guarisma v. ADCAHB Medical Coverages, Inc., et al.*, 1:13-cv-21016, Doc. 95 (S.D.FL. June 24, 2015) (awarding one third plus costs)[10].

        Recently the court in *In re Capital One Tel. Consumer Prot. Act Litig*, 2015 U.S. Dist. LEXIS 17120, *62  (N.D. Ill. Feb. 12, 2015), analyzed dozens of TCPA class settlements throughout the country and determined that a risk adjusted fee structure would provide a fee of 36% for the first $10 million and then lower percentages after that.  *See also Allapattah*, 454 F. Supp.2d at 1202 (S.D. Fla. 2006) (awarding 31.33%).  At 25%, the present Settlement Agreement

---

[10] *Gehrich v. Chase Bank, USA, N.A.*, No. 1:12-cv-05510 (N.D. Ill. Aug. 12, 2014) (preliminarily approving attorneys' fees and costs up to $11,000,000 (Feinerman, J.) (Dkt. No. 117) (one-third of the Settlement Fund after subtracting the Dedicated Cy Pres Distribution); *Martin v. Dun & Bradstreet, Inc. et al*, No. 1:12-cv-00215 (N.D. Ill. Jan. 16, 2014) (Martin, J.) (Dkt. No. 63) (awarding one-third fee payment of distributed fund); *Cummings v Sallie Mae*, 12 C-9984 (N.D. Ill. May 30, 2014) (Gottschall, J.) (Dkt. No. 91) (awarding one-third of the common fund for fees); *Hanley v. Fifth Third Bank*, No. 1:12-cv-01612 (N.D. Ill. Dec. 23, 2013) (Castillo, J.) (Dkt. No. 86) (awarding one-third of common fund); *Desai v. ADT Sec. Servs., Inc.*, No. 1:11-cv-01925 (N.D. Ill. June 21, 2013) (Bucklo, J.) (Dkt. No. 243) (approving payment of one-third of common fund); *Paldo Sign and Display Company v. Topsail Sportswear, Inc.*, No. 1:08-cv-05959 (N.D. Ill. Dec. 21, 2011) (Kennelly, J.) (Dkt. No. 116) (approving one-third of the settlement fund plus expenses); *CE Design Ltd. v. Cy's Crab House N., Inc.*, No. 1:07-cv-05456 (N.D. Ill. Oct. 27, 2011) (Kennelly, J.) (Dkt. No. 424)  (Dkt. No. 100) (same); *G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 1:07-cv-05953 (N.D. Ill. Nov. 1, 2010) (Kendall, J.) (Dkt. No. 146) (same); *Hinman, et al., v. M & M Rental Ctr., Inc.*, No. 1:06-cv-01156 (N.D. Ill. Oct. 6, 2009) (Bucklo, J.) (Dkt. No. 225) (same); *Holtzman v. CCH*, No. 1:07-cv-07033 (N.D. Ill. Sept. 30, 2009) (Nordberg, J.) (Dkt. No. 33) (same); *CE Design, Ltd. v. Exterior Sys., Inc.*, No. 1:07-cv-00066 (N.D. Ill. Dec. 6, 2007) (Darrah, J.) (Dkt. No. 39) (same); *e.g., Locklear Elec., Inc. v. Norma L. Lay*, No. 3:09-cv-00531 (S.D. Ill. Sept. 8, 2010) (Reagan, J.) (awarding 33% of the common fund plus costs); *Accounting Outsourcing, LLC. V. Verizon Wireless*, No. 03-CV-161, 2007 U.S. Dist. LEXIS 97153, at *6-7 (M.D. La. 2007) (awarding in excess of 35% of the common fund plus costs).

does not reach even this customarily approved one third mark and includes costs.  Accordingly, this factor also favors the agreed cost and attorney fee award proposed here.

### 5.   This Case Required a High Level of Skill.

The remaining *Johnson* factors – the skill required to perform the legal services properly and the experience, reputation, and ability of the attorneys – confirm that the costs and fees sought are reasonable.    As shown above, Class Counsel achieved a settlement that confers substantial monetary and non-monetary benefits to the Settlement Class despite the hard fought litigation against a sophisticated and well-financed defendant represented by top-tier counsel.  *See In re Sunbeam Sec. Litig.,* 176 F. Supp.2d at 1334 ("In assessing the quality of representation, courts have also looked to the quality of the opposition the plaintiffs' attorneys faced.")

This outcome was made possible by Class Counsel's extensive experience in litigating class actions of similar size, scope, and complexity to the instant action.  Class Counsel regularly engage in complex litigation involving consumer issues, all have been lead counsel in numerous TCPA cases, Mr. Keogh has the two largest settlements in the history of the TCPA and regularly lectures on the TCPA, Mr. Owens is one of the leading TCPA practitioners in Florida, and Mr. Lusskin is a consumer advocate who has been appointed class counsel as well.  *See Appendix 4* at ¶¶4 and 12 and *Appendix 5* at ¶15; *Appendix 6* at ¶¶10-11.  The *Johnson* factors confirm that the mediated cost and attorney fee award agreed is reasonable.

Once again, since Class Counsel is seeking the benchmark of 25%, an examination of the *Johnson* factors is not required, but if these factors illustrate the fees sought are more than reasonable.

### VI.    CONCLUSION

This Agreement provides significant and immediate benefits for the Class, it is the result of arm's length, informed negotiations with the assistance of an experienced mediator, and it satisfies each of the six *Bennett* factors.    The Agreement is fair, reasonable, and adequate under Rule 23, and thus Plaintiff respectfully requests that this Court enter an order granting it final approval.  A draft Final Approval Order is attached as *Appendix 7.*


Respectfully Submitted

*/s/ Scott D. Owens*

SCOTT D. OWENS, Esq.
664 E. Hallandale Beach Blvd.
Hallandale, FL 33009
Tel: 954-589-0588
Fax: 954-337-0666
scott@scottdowens.com

BRET L. LUSSKIN, Esq.
20803 Biscayne Blvd., Suite 302
Aventura, Florida 33180
Telephone: (954) 454-5841
Facsimile: (954) 454-5844
blusskin@lusskinlaw.com

Keith J. Keogh
Keogh Law, LTD.
55 W. Monroe St., Ste. 3390
Chicago, Il 60603
312.374.3403 (Direct)
312.726.1092 (Main)
312.726.1093 (Fax)
Keith@KeoghLaw.com
www.KeoghLaw.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that August 17, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this August 17, 2015, in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: */s/ Scott D. Owens*
**Scott D. Owens, Esq.**